WILLIAM C. MAIER, PETITIONER-RESPONDENT, v.
TOWNSHIP OF UNION, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 1, 1977—Decided December 14, 1977.

468

Before Judges LORA, SEIDMAN and MILMED.

*Mr. John W. O'Brien* argued the cause for appellant (*Messrs. O'Brien, Brett, Martin & Leitner,* attorneys).

*Mr. Joseph D. Haggerty* argued the cause for respondent.

PER CURIAM. Petitioner, a police officer in the employ of the Township of Union, sustained a concededly compensable myocardial infarction on February 2, 1972. He filed in due course a claim petition for compensation. A settlement was thereafter agreed to between him and his employer's insurance carrier. Pursuant to *N. J. S. A.* 34:15–22, testimony was taken and stipulations made before the judge of compensation, following which an order approving settlement was entered on June 21, 1973, determining petitioner's permanent disability, cardiac in nature, to be 27½% of total, and awarding him therefor $40 a week for 157½ weeks, for a total of $6050.

In July 1974 petitioner filed an application for review or modification of formal award under *N. J. S. A.* 34:15–27, based upon a claim of increased disability. The application being resisted, a hearing was held thereon. Applying the "odd-lot" doctrine, the judge of compensation (not the one who presided at the first hearing) found that petitioner had been 100% totally disabled since January 4, 1973, when temporary disability ended. Judgment was entered awarding petitioner 450 weeks at $101 a week, for a total of $45,450, with credit to respondent for the prior payment of $6060.

Respondent appeals, contending that (1) the judge of compensation applied the wrong legal principles in adjudicating the petition for modification, and (2) petitioner is not totally disabled. We affirm the judgment, but not for the reasons expressed by the judge below in his oral opinion.

The judge of compensation reasoned that

* * * [t]he really critical question in this case is whether petitioner was — for all practical purposes — unemployable from the time of his original infarction of February 16, 1972, and continuing down

to the present. For if that question can be answered in the affirmative, it matters not one whit whether petitioner's basic cardiac pathology has not changed.

\* \* \* \* \* \* \* \*

\* \* \* [It] should be fully understood that the adjudication on June 21, 1973 — was res judicata only as to the issues then presented.

Clearly, a reading of the transcript of the hearing does *not* adress . [*sic*] itself to the question of employability. \* \* \*

Where parties enter into a settlement concerning the extent of disability, the matter, as prescribed in *N. J. S. A.* 34:15–22, is presented to a judge of compensation, who, after considering the sworn testimony of petitioner and other witnesses who may be offered, together with any stipulations and the consent of petitioner, may enter an order approving settlement, *which order shall have the same effect as a determination and rule for judgment,* and may be reopened only in accordance with the provisions of *N. J. S. A.* 34:15–27.

To the extent pertinent here, *N. J. S. A.* 34:15–58 provides further that a decision, award, determination and rule for judgment or *order approving settlement* shall be final and conclusive between the parties and shall bar any subsequent action or proceeding, unless reopened by the Division or appealed.

In this case the judge of compensation at the original hearing correctly followed the required procedure. Stipulations as to jurisdiction, compensability and medical expenses were made and accepted; petitioner was fully questioned as to causation and complaints, and the parties agreed on the percentage of disability. The judge found the settlement to be fair and just and approved the same, determining the extent of disability to be 27½% of total.

The second hearing in this matter arose out of petitioner's application made under *N. J. S. A.* 34:15–27. This section provides, among other things not relevant to the case, that a "formal award, determination and rule for judgment *or order approving settlement* may be reviewed within two years from the date [of last payment] upon the application of

either party on the ground that *the incapacity of the injured party has subsequently increased"* (emphasis supplied).

■■ The continuing jurisdiction of the Division upon such application is "limited to a review of the disability, insofar as it may have subsequently increased or diminished, and this is the *only* proper subject of review * * *"* (emphasis supplied). *Hopler v. Hill City Coal and Lumber Co.,* 5 *N. J.* 466, 471 (1950). A claim of increase or decrease of disability is grounded in the comparative condition and ability of the workman and, to prevail, must be supported by proofs which permit comparison. *Id.* See also *Yeomans v. Jersey City,* 27 *N. J.* 496, 508 (1958).

■ Here, the judge of compensation, at the second hearing, expressly stated that he was deciding not whether the incapacity had increased, but rather whether petitioner was unemployable at the time of the date of termination of temporary disability. He clearly did not have jurisdiction to make such determination in a proceeding under *N. J. S. A.* 34:15–27. The earlier order for settlement was final and conclusive as to all questions of law and fact comprehended by that determination, including the nature and extent of the existing disability. *Hopler v. Hill City Coal & Lumber Co., supra* 5 *N. J.* at 470–471. Employability was not a separate issue distinct from the issue of the extent of disability or incapacity. A worker's ability to perform labor is necessarily implicated in the extent of disability. See *Yeoman v. Jersey City, supra,* 27 *N. J.* at 508. By deciding the matter as he did, the judge of compensation held in effect that petitioner's disability actually had not increased, since he was totally disabled even at the time of the first hearing. Such a determination should logically have led to a dismissal of the petition in light of the limited scope of the hearing.

■ However, we have independently examined the record and, in the exercise of our original jurisdiction (*R.* 2:10–5), find from the credible evidence that petitioner's disability did in fact increase after the original hearing to the extent

that he became 100% disabled, and that the increase was causally related to the initial cardiac episode.

Petitioner testified that after he took up residence in Florida in September 1973 his use of nitroglycerin pills increased, he complained more frequently of chest pains and he experienced greater difficulty upon walking or climbing stairs. His condition, he said, gradually worsened. He obtained part-time employment, working a few hours a day in a liquor store, but had to discontinue after $2\frac{1}{2}$ days because of increased chest pain. He said, further, that he was a high school graduate and had no other specialized training than as a police officer.

One of the medical experts testifying in petitioner's behalf, Dr. Rowland D. Goodman, an internist specializing in diseases of the heart and lungs, found from a recent examination of petitioner that the patient's cardiac disability had increased to 55% of total by virtue of the worsening symptoms. The patient, he said, now had a much more severe form of anginal syndrome. In response to a hypothetical question which contained the substance of petitioner's testimony, Dr. Goodman expressed the opinion that petitioner was unemployable.

The other expert, a Dr. Kopel Burk, also an internist, was of the view, considering the facts detailed in the hypothetical question, that petitioner's complaints had worsened, that his symptoms were more prominent and that he was not capable of competing for employment in an open labor market. The increase in disability, he said, was related to the initial infarction.

Respondent's only witness, Dr. Jack S. York, an internist, concluded from his recent examination of petitioner that there was no change in the status of the previous infarction and that if petitioner had angina, it "could be due" to coronary arteriosclerosis and not to the infarction. His response to a similar hypothetical question was that "there's been no change in the disability arising from the infarction," but, with the symptomatology contained in the hypothetical ques-

tion, "it seems reasonable that he's got greater disability due to coronary arteriosclerosis with insufficiency or angina." He felt that petitioner could do clerical work.

We conclude from our careful examination of the record that petitioner established by the preponderance of the credible evidence that his disability had increased, that such increase was causally related to the same heart attack upon which the initial award was founded, and that, taking into account his unemployability, he had become 100% disabled.

The "odd-lot" doctrine views the worker in the perspective of the competitive market place. *Rodriguez v. Michael A. Scatuorchio, Inc.*, 42 *N. J. Super.* 341 (App. Div. 1956), certif. den. 23 *N. J.* 140 (1957). Total and permanent work-connected disability may exist notwithstanding some residual physical capacity for light work. *Lightner v. Cohn*, 76 *N. J. Super.* 461 (App. Div. 1962), certif. den. 38 *N. J.* 611 (1962). See *Barbato v. Alsan Masonry*, 64 *N. J.* 514 (1974). Respondent here has failed to carry its burden of showing that work within petitioner's capacity was in fact within reach. *Barbato v. Alsan Masonry, supra* at 529.

Although we reach the conclusion that petitioner's permanent disability has increased to the extent that it is now total, there is no need to modify the judgment entered on December 3, 1975. It awarded petitioner for total disability 450 weeks at $101 ($45,450), and correctly gave respondent credit against that amount for the prior award in terms of dollars ($6050). See *Paul v. Baltimore Upholstering Co.*, 66 *N. J.* 111, 129 (1974). This is precisely what petitioner would be entitled to upon a finding of increased disability to the extent of 100% of total.

The judgment is accordingly affirmed.